Daniel J. Adelman (011368)
Arizona Center for Law
  In the Public Interest
352 E. Camelback Rd., #200
Phoenix, AZ  85012
(602) 258-8850
danny@aclpi.org

Jon Sherman (DC Bar No. 998271)*
Michelle Kanter Cohen (DC Bar No. 989164)*
Cecilia Aguilera (DC Bar No. 1617884)*
Fair Elections Center
1825 K St. NW, Ste. 450
Washington, D.C. 20006
(202) 331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
caguilera@fairelectionscenter.org

John A. Freedman*
Jeremy Karpatkin*
Erica McCabe*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C.  20001
(202) 942-5000
John.Freedman@arnoldporter.com
Jeremy.Karpatkin@arnoldporter.com
Erica.McCabe@arnoldporter.com

Steven L. Mayer*
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111
(415) 471-3100
Steve.Mayer@arnoldporter.com

Leah R. Novak*
Arnold & Porter Kay Scholer LLP
250 W. 55th Street
New York, NY 10019
(212) 836-8000
Leah.Novak@arnoldporter.com

Counsel for Plaintiff
*Application for Pro Hac Vice Admission Forthcoming

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Poder Latinx, | ) Case No.: |
| Plaintiff, | ) |
| | ) **COMPLAINT FOR** |
| v. | ) **DECLARATORY AND** |
| | ) **INJUNCTIVE RELIEF** |
| Katie Hobbs, in her official capacity as Secretary of State of Arizona, Mark Brnovich, in his official capacity as Attorney General of Arizona, Stephen Richer, in his official capacity as Maricopa County Recorder, | ) |
| Defendants, | ) |

Plaintiff Poder Latinx ("Plaintiff" or "Poder Latinx") seeks declaratory and injunctive relief as follows:

**NATURE OF ACTION**

1. This suit challenges new statutory provisions recently enacted as part of House Bill 2492 ("HB 2492") that limit voter registration. Plaintiff seeks to enjoin enforcement of HB 2492's vague, arbitrary, and unconstitutional procedures for investigating the U.S. citizenship of both registration applicants using the National Voter Registration Act ("NVRA") mail-in registration form (the "Federal Registration Form" or "Federal Form") and currently registered voters, and taking action on the results of those investigations. The challenged provisions within HB 2492 include: Ariz. Rev. Stat. §§ 16-121.01(D), 16-121.01(E), and 16-121.01(F), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4; Ariz. Rev. Stat. § 16-143, *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 7; and Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8 (collectively, "the Citizenship Investigation Procedures" or "the Challenged Provisions").

2. HB 2492 requires Defendant Secretary of State Katie Hobbs ("Defendant Hobbs"), Defendant Attorney General Mark Brnovich ("Defendant Brnovich"), Defendant Maricopa County Recorder Stephen Richer (collectively, "Defendants"), and the county recorders in Arizona's other counties to implement the citizenship investigation procedures. In particular, HB 2492 requires Arizona election and law enforcement officials, including Defendants Brnovich and Richer, to conduct open-ended comparisons of voter registration data to all available federal, state, and local databases in search of evidence that registration applicants and registered voters lack U.S. citizenship. HB 2492 also requires the county recorders to reject registration forms and cancel voter registrations based on "information" that the applicant or registered voter "is not a United States citizen." Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4; Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8. Because the statute requires cancellation based on *any* "information" that the individual is not a citizen, regardless of

whether the information is accurate, the law requires removing an individual from the list of registered voters even if the information is years old, not recorded or corroborated in a more recent government database, or is only an unsworn statement verbally communicated to a county recorder's office. Indeed, HB 2492 authorizes the county recorders and Defendant Brnovich to use such unspecified types of "information" to reject registration forms, cancel existing registered voters' records, and subject these erroneously flagged individuals to investigation and prosecution.

3.      In recently vetoing a similar piece of legislation, House Bill 2617, Governor Doug Ducey made the following statement:

> It is equally important that our laws include safeguards to protect the vote of any Arizonan who is eligible and lawfully registered. . . .
>
> H.B. 2617 requires a county recorder to cancel the voter registration of a voter if the recorder receives information that provides the basis for determining that the person is not a qualified elector. The implementation of this provision is vague and lacks any guidance for how a county recorder would confirm such a determination. Our lawfully registered voters deserve to know that their right to vote will not be disturbed without sufficient due process. This provision leaves our election system vulnerable to bad actors who could seek to falsely allege a voter is not a qualified elector.
>
> . . . . The subjectivity of this provision, as well as a lack of guardrails against false claims, included in H.B. 2617 leaves voter registration susceptible to being canceled based on fiction rather than fact.

*See* Governor Ducey Veto Statement on House Bill 2492, *available at* https://www.azleg.gov/govlettr/55leg/2r/hb2617.pdf. As a nearly identical registration cancellation provision appears in HB 2492, Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8, Governor Ducey's veto statement articulates much of what is wrong with the law challenged here. If the phrase "information that the person . . . is not a United States citizen" is vague, prone to arbitrary implementation, and susceptible to third-party abuse as used in HB 2617, HB 2492's repeated use of the same disqualification standard suffers from the same fatal constitutional defects.

4.      Even prior to HB 2492's enactment, Arizona's documentary proof of citizenship ("DPOC") requirement, which was adopted in 2004 as part of Proposition 200,

was the only such law enforced in the nation. Now HB 2492 will impose additional restrictions on Arizona's already uniquely burdensome and byzantine voter registration system. No other state in the country has adopted such draconian measures. The experience of the other 49 states that do not impose these unique burdens on citizens attempting to vote demonstrates that the restrictions imposed by HB 2492 are unnecessary to further any lawful governmental purpose.

5.      When HB 2492 takes effect in 2023,[1] these new mandates will immediately result in the inaccurate, arbitrary, discriminatory, and ultimately unlawful treatment of naturalized voters throughout Arizona: all United States citizens who may be erroneously flagged as non-citizens based on old and inaccurate data, subjected to unwarranted extra scrutiny, unlawfully removed from the rolls, and even prosecuted. HB 2492's pernicious effects will be felt by Arizona's racial and ethnic minority voters, who comprise a large majority of naturalized citizens.[2] Consequently, the challenged laws will do severe harm to the voter registration operations and civic engagement mission of community organizations like Plaintiff Poder Latinx, which is engaged every week in registering and securing the trust of Latinx voters in Arizona and assisting them in registering to vote.

6.      HB 2492's citizenship investigation procedures violate the U.S. Constitution in several ways. First, the challenged provisions are bereft of any rules or criteria for Defendants to apply in deciding who is and who is not a U.S. citizen. Whereas the preexisting DPOC requirement contains an objective list of the specific forms of documentation that prove a registration applicant's U.S. citizenship, Ariz. Rev. Stat. § 16-166(F), HB 2492 does not articulate what "information" will prove that a registration

---

[1] A separate bill, Senate Bill 1638 ("SB 1638"), delays the effective date of HB 2492 until January 1, 2023.

[2] United States Census Bureau, Table S0501, "Selected Characteristics of the Native and Foreign-Born Populations," available at https://data.census.gov/cedsci/table?q=S0501%3A%20SELECTED%20CHARACTERISTICS%20OF%20THE%20NATIVE%20AND%20FOREIGN-BORN%20POPULATIONS&g=0400000US04&tid=ACSST5Y2020.S0501.

applicant or registered voter "is not a United States citizen." In particular, HB 2492 fails to inform Arizona state and local officials as to how they should review and evaluate outdated citizenship status information contained in government databases. Without such standards, Defendants will make inconsistent and irreconcilable determinations as to applicants' and voters' *current* citizenship status. This creates a significant risk that different county recorders and different staff members within a county recorder's office will apply varying rules, standards, and methods in comparing voter registration applicants and registered voters to the government and voter registration databases that they are required to search pursuant to HB 2492. Ascertaining what information suffices to determine a voter registration applicant or registered voter is not a U.S. citizen will be left to the subjective analysis, discretion, and guesswork of Defendants and their staff. Some county recorders and individual staff members will treat stale government data showing an individual was not a U.S. citizen at some time in the past as evidence they are still non-citizens; others will keep digging and find that similarly situated voters were naturalized prior to registering to vote. This arbitrary and disparate treatment of both voter registration applicants and registered voters violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

7.      Second, the failure to provide naturalized registration applicants or existing voters who are erroneously flagged as non-citizens with an opportunity to contest these citizenship status determinations violates the Fourteenth Amendment's protections for procedural due process. While registration applicants who do not include DPOC with the federal form must be notified when county recorders locate "information that the applicant is not a United States citizen," Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4, these applicants are not afforded an opportunity to be heard and prove their U.S. citizenship. Combined with the inherent arbitrariness of these open-ended and vague investigation directives, HB 2492 violates the Due Process Clause.

8. Finally, HB 2492's documentary proof of residence ("DPOR") requirement also does not afford due process to voter registration applicants who fail to provide DPOR. The new DPOR requirement does not require county recorders to provide notice to voter registration applicants that they failed to provide DPOR, let alone give them an opportunity to cure the deficiency. Ariz. Rev. Stat. § 16-123, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 5. At a minimum, Arizona law fails to provide due process to registration applicants using the federal form. Ariz. Rev. Stat. § 16-134; Ariz. Rev. Stat. § 16-121.01(A), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4.

9. Plaintiff challenges these provisions of HB 2492 under the Fourteenth Amendment's Equal Protection and Due Process Clauses, as enforced by 42 U.S.C. § 1983. Poder Latinx seeks a declaratory judgment and preliminary and permanent injunctive relief.

**JURISDICTION AND VENUE**

10. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over this suit because it arises under the Constitution and laws of the United States.

11. This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12. This Court has jurisdiction to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

13. This Court has personal jurisdiction over Defendant Hobbs, Defendant Brnovich, and Defendant Richer, who are sued in their official capacities. Defendants Hobbs and Brnovich are state officials, and Defendant Richer is a county official, each of whom reside in Arizona and work in Phoenix, Arizona.

14. Venue is appropriate in the District of Arizona, under 28 U.S.C. § 1391(b)(1), because Defendants Hobbs and Brnovich are state officials and Defendant Richer is a county official, each of whom work in Phoenix, Arizona. A substantial part of the events giving rise to these claims occurred and continues to occur in this district, making venue also proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

15.    Plaintiff Poder Latinx is a civic and social justice organization with a vision to build political power for the Latinx community to become decision-makers in this democracy and win on economic, immigrant, and environmental issues. Its mission is to build a sustained voting bloc of Latinxs in battleground states. It operates in Arizona, Florida, and Georgia.[3] Poder Latinx works locally to expand the electorate by conducting year-round civic engagement activities, community empowerment, leadership development, and issue-based organizing. Poder Latinx carries out its mission to expand the electorate by encouraging citizens to register to vote through in-person voter registration drives, digital campaigns, and telephone banking. Poder Latinx's civic engagement work is focused on educating voters on how to register and exercise their right to vote, the accepted types of identification necessary to vote in Arizona, how to request vote-by-mail ballots, and how to return a ballot.

16.    Defendant Katie Hobbs is the Secretary of State for the State of Arizona. She is sued in her official capacity. The Secretary of State serves as the Chief Election Officer for Arizona. Ariz. Rev. Stat. § 16-142. The Secretary of State is the public officer responsible for supervising voter registration throughout the state and providing binding regulations and guidelines for voter registration. *Id.*; *see also Arizona Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427 at *6 (D. Ariz. Nov. 3, 2016) ("The Secretary has the authority to promulgate rules and procedures for elections, such as voter registration, which encompasses determining voter registration deadlines. . . . Any person who does not abide by the Secretary's rules is subject to criminal penalties."). As the state's chief election official, the Arizona Secretary of State has power to compel the county recorders to comply with state and federal election laws, as well as court rulings. *See* Ariz. Rev. Stat. § 16-142 ("The secretary of state or the secretary's designee is . . . [t]he chief state election

---

[3] Plaintiff Poder Latinx is a fiscally sponsored project of Tides Advocacy, a California nonprofit public benefit corporation.

7

officer"); *id.* § 16-452(A) ("After consultation with each county board of supervisors or other officer in charge of elections, the secretary of state shall prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of producing, distributing, collecting, counting, tabulating and storing ballots. . . .").

17.    Defendant Mark Brnovich is the Attorney General for the State of Arizona. He is sued in his official capacity. Under HB 2492, the Secretary of State and 15 county recorders are required to provide a list and the applications of all registered federal-only voters who have not provided DPOC to the Attorney General. Ariz. Rev. Stat. § 16-143(A), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7. The Attorney General is required to search any federal, state, or local government database to which the office has access and any other voter registration database. Ariz. Rev. Stat. § 16-143(B), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7. Finally, the Attorney General is *required* "to prosecute individuals who are found to not be United States citizens" for registration fraud under Ariz. Rev. Stat. § 16-182, and to submit a report to the legislature before March 31, 2023, detailing any findings. Ariz. Rev. Stat. §§ 16-143(D)-(E), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7.

18.    At the local level, Arizona election law is administered by 15 county recorders. They are responsible for administering federal, state, and local elections in their counties, processing all voter registration forms, and adding and removing voters from the rolls. *See* Ariz. Rev. Stat. § 16-168 (describing county recorders' procedures for preparing list of qualified electors for precinct registers).

19.    Defendant Stephen Richer is the Maricopa County Recorder. He is sued in his official capacity.

### BACKGROUND

**A.    Arizona's Documentary Proof of Citizenship Requirement**

20.    Since 2005, Arizona election law has contained a documentary proof of citizenship ("DPOC") requirement for voter registration applicants. When a person registers

to vote, they must provide one of the following forms of "evidence of citizenship" from the statutory list:

1. The number of the applicant's driver license or nonoperating identification license issued after October 1, 1996 by the department of transportation or the equivalent governmental agency of another state within the United States if the agency indicates on the applicant's driver license or nonoperating identification license that the person has provided satisfactory proof of United States citizenship.

2. A legible photocopy of the applicant's birth certificate that verifies citizenship to the satisfaction of the county recorder.

3. A legible photocopy of pertinent pages of the applicant's United States passport identifying the applicant and the applicant's passport number or presentation to the county recorder of the applicant's United States passport.

4. A presentation to the county recorder of the applicant's United States naturalization documents or the number of the certificate of naturalization. If only the number of the certificate of naturalization is provided, the applicant shall not be included in the registration rolls until the number of the certificate of naturalization is verified with the United States immigration and naturalization service by the county recorder.

5. Other documents or methods of proof that are established pursuant to the immigration reform and control act of 1986.

6. The applicant's bureau of Indian affairs card number, tribal treaty card number or tribal enrollment number.

Ariz. Rev. Stat. § 16-166(F).

21. The DPOC requirement permits applicants to put down certain identification numbers in lieu of the presentation of a physical document, subject to the requirement that these must be verified by the county recorders' offices prior to adding voters to the rolls. For instance, the number on an Arizona driver's license or state identification card issued after October 1, 1996 fully satisfies the DPOC requirement if the county recorder's office verifies that the license or card holder has **not** been issued an "F-type" license. 2019 Arizona Election

Procedures Manual ("2019 EPM") at 3.[4] The Arizona Department of Transportation ("AZDOT") Motor Vehicles Division ("MVD") issues F-type licenses to individuals who are legally present in the United States but who are not U.S. citizens at the time of application. *Id*. at 3-4; *see also Foreign Applicants,* Arizona Department of Transportation, https://azdot.gov/motor-vehicles/driver-services/driver-license-information/foreign-applicants (last visited June 7, 2022) (detailing how foreign applicants can obtain a driver's license in Arizona). If such an individual later naturalizes as a U.S. citizen and still possesses an F-type license, old AZDOT data will still reflect that the cardholder is a non-citizen, and another form of "evidence of citizenship" must be supplied before the applicant will be registered to vote a full ballot. *Id*. at 3 ("[T]he verification must not return a result that indicates non-citizenship (i.e., an 'F-type' license)." It takes money and time to trade in an F-type license and obtain a license that reflects the voter registration applicant's U.S. citizenship.

22.    Nine years ago, the U.S. Supreme Court decided *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ("*ITCA*"), a challenge to the application of Arizona's proof of citizenship requirement to the federal registration form. In an opinion written by Justice Scalia, the Supreme Court concluded that the NVRA prohibits states from applying different or additional requirements, such as Arizona's DPOC requirement, to the federal registration form. The Court expressly held "that [52 U.S.C. § 20505] precludes Arizona from requiring a Federal Form applicant to submit information beyond that required by the form itself." *ITCA*, 570 U.S. at 20. Arizona's DPOC requirement is not part of the Arizona-specific instructions for the federal registration form.

23.    Since the *ITCA* decision, Arizona has administered the nation's only dual-track voter registration and voting process. Under this system, registered Arizona voters who have provided DPOC may vote in all elections, including federal, state, and local elections.

---

[4] 2019 Arizona Election Procedures Manual, *available at* https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf.

They are known as "full-ballot" voters. Registered Arizona voters who have *not* provided DPOC—and for whom none has been located by county recorders—are only permitted to vote in federal elections. They are known as "federal-only" voters. HB 2492 arbitrarily prohibits such "federal-only" voters from voting in presidential elections; they may therefore only vote in congressional elections. Ariz. Rev. Stat. § 16-127(A)(1), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 5.

24.     Prior to HB 2492's enactment, Arizona law required county recorders to search the MVD database for DPOC whenever any registration applicant submitted any registration form without DPOC. 2019 EPM at 6. This requirement was imposed to force county recorders to locate DPOC so that voters could be registered for all elections. It was not imposed as part of an effort to investigate the voter's current citizenship status. Per the 2019 Election Procedures Manual, a county recorder was required to register an applicant as a "full-ballot" voter for the next election if

> • The registrant provides DPOC with or after submission of the registrant's voter registration application; or
>
> • The County Recorder acquires DPOC on the registrant's behalf, including from AZMVD records or the statewide voter registration database.

2019 EPM at 6 (citing Ariz. Rev. Stat. § 16-166(F)). The requirement to conduct such a DPOC search for registration applicants using ***Arizona's*** registration form was part of a consent decree entered in *League of United American Citizens of Arizona (LULAC) v. Reagan*, 2:17-cv-04102-DGC, Doc. 37 (D. Ariz. June 18, 2018) (the "LULAC Consent Decree").

25.     HB 2492 seeks to override that preexisting federal consent decree. When the new law takes effect in 2023, an Arizona voter registration form[5] that is submitted without DPOC must be rejected by the county recorder's office, without exception or prior database

---

[5] This is the state voter registration form in Arizona: https://azsos.gov/sites/default/files/voter_registration_form.pdf.

searches for evidence of citizenship. Failing to reject the form has been made a Class 6 felony. Ariz. Rev. Stat. § 16-121.01(C), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4. The registration applicant must be notified and afforded an opportunity to provide DPOC, pursuant to Ariz. Rev. Stat. § 16-134(B). That statute provides that:

> [i]f the information on the registration form is incomplete or illegible and the county recorder is not able to process the registration form, the county recorder shall notify the applicant within ten business days of receipt of the registration form, shall specify the missing or illegible information and, if the missing or illegible information includes any of the information prescribed by § 16-121.01, subsection A, shall state that the registration cannot be completed until the information is supplied. If the missing or illegible information is supplied before 7:00 p.m. on election day, that person is deemed to have been registered on the date the registration was first received.

Ariz. Rev. Stat. § 16-134(B).

**B.    The New Citizenship Investigation Procedures Under HB 2492**

26.    HB 2492 imposes a set of new citizenship documentation and investigation procedures. First, HB 2492 mandates that county recorders investigate the citizenship status of new registration applicants using the federal registration form if the submitted form is not accompanied by DPOC. Ariz. Rev. Stat. § 16-121.01(D), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4.

27.    HB 2492 instructs county recorders to "use all available resources to verify the citizenship status of the applicant and at a minimum shall compare the information available on the application for registration with the following, provided the county has access": (1) AZDOT databases of Arizona driver licenses and state identification cards; (2) Social Security Administration databases; (3) U.S. Citizenship and Immigration Services Systematic Alien Verification for Entitlements ("SAVE") Program, "if practicable"; (4) a National Association for Public Health Statistics and Information Systems Electronic Verification of Vital Events System; and (5) "***any other state, city, town, county or federal database and any other database relating to voter registration*** to which the county recorder

or office in charge of elections has access, including an Electronic Registration Information Center database." Ariz. Rev. Stat. § 16-121.01(D), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4 (emphasis added). Effectively, this means county recorders must consult every government database at their disposal, including but not limited to the above government and voter registration databases, and any non-governmental database concerning voter registration including but not limited to ERIC databases.

28.    After all government databases are searched for the applicant's citizenship status, the applicant is treated in one of three ways, depending on the outcomes of these searches:

    a.    In Scenario 1, if the county recorder "matches the applicant with information that verifies the applicant is a United States citizen, is otherwise qualified as prescribed by Section 16-101 and has met the other requirements of this section, the applicant shall be properly registered." Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4. Such applicants are registered as "full-ballot" voters.

    b.    In Scenario 2, if the county recorder's office "matches the application with ***information that the applicant is not a United States citizen***," then the county recorder must "reject the application, notify the applicant that the application was rejected ***because the applicant is not a United States citizen*** and forward the application to the county attorney and Attorney General for investigation." *Id*. (emphasis added). This provision does not enumerate or otherwise specify what "information" establishes that a registration applicant "is not a United States citizen." Nor does it reference the notice and curing procedure outlined in Ariz. Rev. Stat. § 16-134(B). While requiring notice to the applicant of the rejection, by its terms, HB 2492 does not afford the registrant an opportunity to cure by providing proof

of citizenship before being automatically referred to the county attorney and Attorney General for investigation.

  c. In Scenario 3, if the county recorder "is unable to match the applicant with ***appropriate citizenship information***"—a vague phrase not used anywhere else in Arizona's election laws—the county recorder must "notify the applicant that the county recorder . . . could not verify that the applicant is a United States citizen and that the applicant will not be qualified to vote in a presidential election or by mail with an early ballot in any election until satisfactory evidence of citizenship is provided." *Id*. (emphasis added). Such voters will only be permitted to vote in congressional elections.

Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4.

29. HB 2492 also requires county recorders to "record the efforts made to verify an applicant's citizenship status." Ariz. Rev. Stat. § 16-121.01(F), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4. Additionally, if the county recorder "fails to attempt to verify the citizenship status of an applicant" according to these procedures and "knowingly causes the applicant to be registered and it is later determined that the applicant was not a United States citizen at the time of registration," the county recorder has committed a Class 6 felony. *Id*.

30. HB 2492 requires a similar process to investigate currently registered Arizona voters who have not provided DPOC and can only vote in congressional elections. For such congressional-only voters, the challenged law requires Defendant Brnovich to engage in the same wide-ranging database reviews to identify voters who are purportedly not U.S. citizens and "prosecute individuals who are found to not be United States citizens." Ariz. Rev. Stat. 16-143, *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 7. To initiate this process, the Secretary of State and 15 county recorders are required to provide to the Attorney General a list and the applications of all registered congressional-only voters who have not provided DPOC. Ariz. Rev. Stat. § 16-143(A), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7. The Attorney General is then required to search any federal, state or local government database

and any other voter registration database, *i.e.*, the same citizenship investigation procedures that county recorders are required to use when a federal registration form is submitted without DPOC. Ariz. Rev. Stat. § 16-143(B), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7. Finally, the Attorney General is *required* "to prosecute individuals who are found to not be United States citizens" for registration fraud under Ariz. Rev. Stat. § 16-182, and to submit a report before March 31, 2023, detailing any findings. Ariz. Rev. Stat. §§ 16-143(D)-(E), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7. One plausible reading of Section 16-143 is that it requires a one-time-only investigation of currently registered congressional-only voters via database verification, but it may well be interpreted to authorize the Attorney General to investigate currently registered voters' citizenship status on an ongoing basis. Either way, this suit seeks injunctive relief against these provisions, as they suffer from the same constitutional defects as the citizenship investigation procedures directed at new voter registration applicants using the federal registration form.

31.    HB 2492 also requires county recorders to cancel the voter registration records of individuals when they "receive[ ] and confirm[ ] information that the person registered is not a United States citizen." Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8.[6] Once again, HB 2492 does not specify what type, set, or combination of "information" establishes that a registered voter "is not a United States citizen"; nor do these provisions acknowledge, let alone address, these flagged registered voters' likely naturalization subsequent to the government record's creation but before their registration as a voter. These vague instructions will inevitably cause arbitrary and disparate treatment of registered voters and thereby arbitrary allocation of the right to vote. Some but not all county recorders and their staff members will rely on such unreliable information. Some but not all county recorders will investigate more thoroughly to discover subsequent

---

[6] HB 2617's language was identical: "when the county recorder receives and confirms information that the person registered is not a United States citizen." Senate Engrossed House Bill 2617, 55th Leg., 2nd Reg. Sess. (Ariz. 2022), *available at* https://www.azleg.gov/legtext/55leg/2R/bills/HB2617S.pdf. It differed only in that it listed juror questionnaires as one source of such information. *Id*.

naturalizations. The result will be the arbitrary and disparate treatment of naturalized registered voters.

32. A nearly identical registration cancellation provision appeared in HB 2617, which was recently vetoed by Governor Doug Ducey. Governor Ducey's veto statement cited the law's "subjectivity," "vague[ness]," the "lack[ of] any guidance for how a county recorder would confirm such a determination," and "a lack of guardrails against false claims." All of those same fatal constitutional defects that made HB 2617 vague and vulnerable to arbitrary and disparate application, as well as abuse by third parties, are found here in HB 2492 as well.

33. HB 2492's use of the "information that the person . . . is not a United States citizen" standard renders the statute unconstitutional. While Arizona's preexisting DPOC law enumerates the specific forms of proof that a voter registration applicant can provide to establish U.S. citizenship, Ariz. Rev. Stat. § 16-166(F), HB 2492 does not enumerate what specific "information" proves that a voter registration applicant using the federal form or a registered voter "is not a U.S. citizen." Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4; Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8. The former law creates an objective requirement with specificity; the latter contains only a vague instruction that leaves the registration applicant's citizenship status to the discretion and subjective, arbitrary determinations of Defendant Hobbs, Defendant Brnovich, the county recorders and their staff. This open-ended phrase appears to embrace *any* "information," whether it is current or years old, recorded in a government database or merely verbally communicated to a county recorder's office, corroborated by other sources or not, provided in a sworn statement or not. The legal void created by HB 2492's vague standards will inevitably result in inconsistent and irreconcilable determinations on voter registration applicants and registered voters' citizenship status.

34. Naturalized voters will inexorably be harmed by HB 2492's vesting of unfettered discretion in county recorders to determine what types or combinations of

16

"information" establish a voter registration applicant or registered voter "is not a U.S. citizen." Some county recorders and their staff members will seize upon any information or data that a voter registration applicant or registered voter lacked U.S. citizenship at some point in the past and use that to reject the application and refer that individual to law enforcement or to remove the voter from the rolls. Such officials and their staff may even rely upon unverified and unsubstantiated "information" from private individuals or political organizations as to individual applicants' or voters' citizenship. HB 2492 does not require county recorders to assess whether the applicant has in fact naturalized subsequent to their AZDOT or public assistance office transaction prior to registering to vote.

35.    Other county recorders statewide or other staff members within the same county recorder office will interpret the same government databases and other information differently, remaining skeptical of any reliance on stale, outdated government data or unverified and unsubstantiated accounts of registration applicants' citizenship. These officials and their staff would be well-justified in refusing to credit any such information of non-citizenship, given the inherent failure to account for the possibility of subsequent naturalization. Absent a comprehensive and up-to-date list of all naturalized U.S. citizens, completely accurate verification of current U.S. citizenship status is not possible. There is no database that has current, up-to-date citizenship status information for all residents of the United States or Arizona. All databases or systems that contain U.S. citizenship status information are based on transactions or events that took place at some point in the past, often in the distant past. A number of the databases listed in HB 2492 are known to contain outdated and inaccurate information on citizenship status.

36.    For example, SAVE is designed to verify immigration status in order to determine one's eligibility for various public benefits. SAVE is a massive compilation of records from numerous databases about individuals who have interacted with the immigration system over the years, such as immigrants who have obtained green cards or

visas, and those who have become naturalized citizens.[7] It is not a definitive or accurate list of U.S. citizens.[8] SAVE is not a universal citizen database and does not purport to be complete or to include many individuals.[9]

37.    On information and belief, SAVE does not contain information on citizens born in the United States and thus can only provide information on voters who are naturalized citizens (and some derived citizens,[10] see below) and whose information may be collected in SAVE. As a result, under HB 2492, only Arizona's naturalized and derived citizens would be at risk of rejection, removal, or prosecution based on the information contained in SAVE.

38.    On information and belief, another source of inaccuracy is that SAVE cannot verify derived citizens, individuals who acquired U.S. citizenship by virtue of their parents' naturalization while they were minors, unless they applied for Certificates of Citizenship. However, a Certificate of Citizenship is an optional form: a person who automatically obtains citizenship is not required to file an Application for Certificate of Citizenship.[11]

39.    Indeed, the Department of Homeland Security ("DHS"), which administers SAVE, itself acknowledges that the SAVE system is a non-definitive source for determining citizenship. On information and belief, the memoranda of agreement between SAVE and jurisdictions which use its information for voter registration purposes, including Arizona,

---

[7] *See* Corrected Declaration and Expert Report of Daniel A. Smith ¶ 42 n.19, *Arcia v. Detzner*, No. 13-CV-4095-EFM-TJJ, Dkt. No. 76-1 (S.D. Fla. Sept. 24, 2012).

[8] *See id.*; U.S. Dept. of Homeland Security, Privacy Impact Assessment for the Systematic Alien Verification for Entitlements (SAVE) Program, at 3, Aug. 26, 2011, *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_uscis_save.pdf.

[9] *See id.*

[10] Derived citizenship refers to citizenship conveyed to children through the naturalization of parents or, under certain circumstances, to foreign-born children adopted by U.S. citizen parents, provided certain conditions are met. *See* https://www.uscis.gov/policy-manual/volume-12-part-h-chapter-3#3#4

[11] U.S. Citizenship and Immig. Servs. Policy Manual, vol. 12, pt. H, ch. 4 (E.) *available at* https://www.uscis.gov/policy-manual/volume-12-part-h-chapter-4.

acknowledge that the inability to verify a person's citizenship in SAVE does not necessarily mean that the person is not a citizen, and that the information in SAVE may need to be corrected. On information and belief, those memoranda require users to provide registrants who do not verify as a citizen with adequate written notice that their citizenship could not be verified and the information necessary to contact DHS-USCIS so that they can correct their records if necessary. By requiring the opportunity to correct their records, DHS-USCIS acknowledges that errors exist in the information SAVE provides.

40.    Because HB 2492 is devoid of any rules or criteria on how to evaluate the databases against which it mandates comparison of voter registration applicants' data and fails to take account of the possibility of the applicant's likely naturalization as a U.S. citizen subsequent to that outdated government transaction record but *prior to* registering as an Arizona voter, the citizenship investigation procedures contained therein will result in the arbitrary and disparate treatment of naturalized U.S. citizens applying to register to vote using the federal registration form and naturalized, registered voters. Such arbitrary and disparate treatment concerning the allocation of the right to vote is HB 2492's inevitable consequence.

41.    In sum, HB 2492's provisions will result in arbitrary and disparate treatment of naturalized voter registration applicants and naturalized registered voters, both within counties and statewide, in violation of the Equal Protection and Due Process Clauses.

**C.    Arizona's Proof of Residence Requirement Under HB 2492**

42.    HB 2492 also imposes a new documentary proof of residence ("DPOR") requirement on all voter registration applicants, except those registering pursuant to Ariz. Rev. Stat. § 16-103 because they are temporarily absent from Arizona, or are voters covered under the Uniformed and Overseas Citizens Absentee Voting Act of 1986. Ariz. Rev. Stat. § 16-123.

43.    Under HB 2492, "a person who registers to vote shall provide an identifying document that establishes proof of location or residence." Ariz. Rev. Stat. § 16-123, *as*

*amended by* 2022 Ariz. Sess. Laws, ch. 99 § 5. The list of identifying documents is anything listed in the voter ID statutes at Ariz. Rev. Stat. § 16-579(A)(1) that contains the voter's name and current address. That list includes the following:

> 1.   The elector shall present any of the following:
>
> (a) A valid form of identification that bears the photograph, name and address of the elector that reasonably appear to be the same as the name and address in the precinct register, including an Arizona driver license, an Arizona nonoperating identification license, a tribal enrollment card or other form of tribal identification or a United States federal, state or local government issued identification. Identification is deemed valid unless it can be determined on its face that it has expired.
>
> (b) Two different items that contain the name and address of the elector that reasonably appear to be the same as the name and address in the precinct register, including a utility bill, a bank or credit union statement that is dated within ninety days of the date of the election, a valid Arizona vehicle registration, an Arizona vehicle insurance card, an Indian census card, tribal enrollment card or other form of tribal identification, a property tax statement, a recorder's certificate, a voter registration card, a valid United States federal, state or local government issued identification or any mailing that is labeled as "official election material". Identification is deemed valid unless it can be determined on its face that it has expired.
>
> (c) A valid form of identification that bears the photograph, name and address of the elector except that if the address on the identification does not reasonably appear to be the same as the address in the precinct register or the identification is a valid United States military identification card or a valid United States passport and does not bear an address, the identification must be accompanied by one of the items listed in subdivision (b) of this paragraph.

Ariz. Rev. Stat. § 16-579(A)(1). All in-person voters in Arizona already present at least one form of identification that shows their current address.

44.    This new requirement also permits the use of "a valid and unexpired Arizona driver license or nonoperating identification number" in lieu of DPOR, but it must be "properly verified" before it satisfies the requirement. Ariz. Rev. Stat. § 16-123, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 5. What is meant by "properly verified" is not specified by the statute.

45.     This new requirement does not contain any provision requiring that notice be sent to the voter registration applicant that they failed to include DPOR and will not be registered until DPOR is provided. HB 2492 makes DPOR a mandatory requirement "to be properly registered to vote." Ariz. Rev. Stat. § 16-121.01(A), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4. HB 2492 authorizes county officials to reject a submitted registration form that is unaccompanied by DPOR, without any opportunity for the voter registration applicant to cure the deficiency.

46.     The notice provisions in Ariz. Rev. Stat. § 16-134 and Ariz. Rev. Stat. § 16-121.01(A), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4, refer to missing or incomplete "information **on** the registration form" or "information required to be **on** the registration form." (Emphasis added). With one exception – the Arizona driver's license or ID number that can satisfy the DPOR requirement – all other forms of *documentary* proof of residence are presented separately and not **on** a registration form. Under these statutory provisions, notice of missing DPOR might be provided to voter registration applicants using the Arizona voter registration form. However, they have no application to applicants who submit the federal registration form, so at a minimum, Arizona law fails to provide due process to registration applicants using the federal registration form.

**PLAINTIFF'S INJURY**

47.     Founded in July 2019, Plaintiff Poder Latinx is a non-partisan, non-profit organization. Poder Latinx employs five staff members and seven canvassers in Arizona and is hiring additional staff. The organization's voter registration program in Arizona has set a goal of collecting and submitting an estimated 11,063 completed voter registration forms in 2022. The projected timeline is February 28, 2022 through the voter registration deadline for the November 2022 general election. As of this filing, they have collected 1,912 voter registration forms.

48.     Poder Latinx has also planned Get Out the Vote ("GOTV") voter mobilization work for 2022 elections in Arizona. Its goal is to canvass an estimated 41,262 total

households from July 10, 2022 through Election Day, November 8, 2022. Plaintiff's canvassers will do about 2 to 3 rounds of door-knocking and a final round for GOTV. By Election Day, they will have knocked on approximately 96,550 doors.

49. Poder Latinx plans to continue its voter registration and civic engagement operations into the future beyond the 2022 election.

50. Poder Latinx currently uses Arizona's state voter registration paper form exclusively, but once HB 2492 takes effect, it will be compelled to use the federal registration form as well to serve Latinx communities in Arizona. Currently, under the LULAC Consent Decree, voter registration applicants submitting the Arizona voter registration form can still be registered to vote, notwithstanding the lack of DPOC. Once HB 2492 takes effect, that will no longer be true; Arizona registration forms submitted without DPOC will be rejected without any opportunity for voters to provide or for county recorders to locate DPOC for the voter. This legal change will force a shift in Poder Latinx's operations, diverting money, resources, and staff time to print off federal voter registration forms, educate and train staff and volunteers on how to use the federal form, create new public-facing educational materials and flyers to guide voter registration applicants using the federal form, and create new public-facing, bilingual materials to educate registration applicants it assists. Poder Latinx will need to educate the naturalized and/or limited English proficient applicants it serves on the effects HB 2492 will have on their ability to register to vote in Arizona with either the state or federal form, with or without DPOC, and their ability to stay registered to vote.

51. Poder Latinx will need to hire an additional Quality Control Agent to reach out to voters who may be erroneously flagged as non-citizens. This staff member will need to keep track of voters Plaintiff has helped register to vote and then check if those voters ultimately made it onto the rolls. The additional cost of hiring this person will be approximately $44,000. Due to the nature of this issue, Plaintiff foresees that this agent will need to continue working even after the voter registration program has ended to keep track

of voter registrations and to try to ensure that these voters' registrations are not erroneously cancelled.

52.    HB 2492's citizenship investigation procedures will upend Poder Latinx's voter registration activities in Arizona and stymie the organization's ability to fulfill its core mission to help register and engage eligible Latinx voters and keep them registered and engaged. Because HB 2492 imposes a new citizenship investigation protocol for each voter who submits a federal form without DPOC and that protocol relies on old government transaction data, the challenged law will necessarily result in countless naturalized voters being erroneously flagged as non-citizens, the rejection of their registration forms, and their referral to law enforcement. Federal voter registration forms will be treated in an arbitrary and disparate manner and without affording the applicants an opportunity to provide DPOC, and registration forms submitted by duly naturalized U.S. citizens will be rejected in error. This unlawful procedure will force Poder Latinx to divert money and resources, as well as staff and paid canvasser time, to re-register eligible voters whose applications were unlawfully rejected. This wastes Poder Latinx's time, money, and other resources and undermines its core mission to expand the electorate, register and engage more eligible Latinx voters, keep those voters registered and engaged, and encourage the Latinx community to participate fully in their democracy.

53.    Further, some portion of the registration applicants whom Poder Latinx assists through its voter registration drives will clear the front-end citizenship investigation procedures only to be later erroneously flagged as non-citizens in the Attorney General's back-end citizenship investigation, erroneously identified as a non-citizen and removed from the rolls by the county recorders, and/or subjected to law enforcement investigation and prosecution. Therefore, the back-end citizenship investigations conducted by the Attorney General and the county recorder's removal of voters based upon "information that the person registered is not a United States citizen" will also result in the arbitrary and disparate treatment of registered voters. These procedures for investigating citizenship status,

cancelling voters based upon outdated or unverified "information," and referring them for prosecution will force Poder Latinx to divert money, resources, and staff and paid canvasser time to re-register individuals who have been unlawfully removed from the rolls. This wastes Poder Latinx's time, money, and other resources and undermines its core mission to expand the electorate, register and engage more eligible Latinx voters, keep those voters registered and engaged, and encourage these communities to participate fully in their democracy.

54.    As a consequence of all of the challenged provisions, Poder Latinx will need to devote more resources, staff time, and money to training its canvassers so they can be prepared to answer questions about Arizona's singular dual-track registration system under the HB 2492 regime, the risks HB 2492 poses to their continued registration, and the threat of being identified as a non-citizen and referred for investigation and prosecution, especially for naturalized registration applicants. HB 2492 will vastly increase the complexity of canvasser training and voter education. Accordingly, it will deter potential canvassers and make it harder for Plaintiff to meet its recruitment and hiring goals. Plaintiff will also need to divert resources, staff time, and money to make and print more educational materials, including flyers and other resources it would not have generated otherwise, and to increase its staff capacity to field the numerous questions and concerns they will receive from Latinx community members who attempted to register to vote through a Poder Latinx voter registration drive. And to communicate effectively with the Latinx community about the new requirements imposed by HB 2492, Poder Latinx will need to use translation services at substantial cost to the organization.

55.    Further, as HB 2492 impacts naturalized U.S. citizens who registered through Plaintiff's voter registration drives, Plaintiff will suffer severe reputational harm in the communities where it has worked and continues to work to secure trust. HB 2492's arbitrary and error-ridden processes will result in registration form rejections, the mandatory cancellation of registrations, referrals to law enforcement for investigation, and mandatory prosecution. Because these voters have placed their trust in Poder Latinx's knowledge as to

the proper and lawful way to register and stay registered to vote, such consequences will badly undermine voters' trust in Plaintiff as a reliable and knowledgeable organization. Not knowing the details and effects of HB 2492, community members will distrust Poder Latinx, thinking that its canvassers did not register them correctly. These negative outcomes will also severely undermine voters' faith and trust in the electoral system, thereby undermining Plaintiff's mission to promote and foster sustained civic engagement in Latinx communities throughout Arizona. Some voters registered by Plaintiff will refuse to engage in the voter registration process again, even if they are not ultimately investigated and prosecuted. Others who are persuaded to go through the registration process again will nevertheless have less trust in Plaintiff and the election system going forward.

56.    Plaintiff Poder Latinx will also be injured by the new DPOR requirement. HB 2492 will force Plaintiff to divert money, resources, and staff and paid canvasser time to comply with the new DPOR requirement. To fulfill its core mission, Plaintiff will need to inform new voter registration applicants about the DPOR requirement and assist them with compliance, particularly if they lack an Arizona driver's license or state ID number, which if "properly verified," will fully satisfy the POR requirement. To that end, Plaintiff will be compelled to modify its training of canvassers and update all of its training resources and materials. Plaintiff will also need to update its handouts for voters and create and print a new handout listing the acceptable forms of DPOR.

57.    Because HB 2492 authorizes the county recorders to reject forms outright if they are submitted without DPOR—without any opportunity for the applicant to cure the deficiency—HB 2492 will effectively eliminate Plaintiff's ability to collect completed voter registration forms. This will effectively end the third-party voter registration drive as it has been known in Arizona. It is not viable for Poder Latinx to scan or photocopy DPOR. Community members, even if they have valid DPOR on them at the time, do not trust others with their documents. Community skepticism and discomfort with handing over DPOR makes it impossible to facilitate this part of the process. Accordingly, the best that Poder

Latinx registration drive canvassers will be able to do under these circumstances is to help applicants complete the form and the process themselves. Instead of collecting a completed form that can be submitted to the county recorder's office, for any voter that lacks an Arizona driver's license or state ID number, Plaintiff's canvassers will need to provide applicants with a bilingual flyer listing the forms of acceptable DPOR and send them on their way with instructions on how to complete the form and submit it with a photocopied form of DPOR. Plaintiff does contact applicants who have incomplete voter registration forms within 24 hours of collection to help them with missing information or documentation to complete the registration process. Because more forms will be incomplete due to a lack of DPOR, Plaintiff will need to increase its quality control efforts compared to before HB 2492 was enacted. Accordingly, this new DPOR requirement will seriously undermine and curtail third-party voter registration drive activity.

58.    In Plaintiff's experience, community voter registration in which canvassers assist applicants with completing and submitting forms is far more effective in getting people registered to vote and prepared to participate in elections than simply giving out voter registration forms and relying on individuals to submit them themselves.

59.    This reduction is all the more harmful in communities with a substantial number of individuals who lack Arizona driver's licenses and state IDs and, therefore, must supply a physical photocopy of DPOR. In conducting its voter registration drives, Poder Latinx often encounters voter registration applicants who do not have an Arizona driver's license or state identification number and therefore will not have a readily accessible means to fulfill the DPOR requirement. Some of these registration applicants Plaintiff encounters do not have ready access to their DPOR, and other applicants do not possess any DPOR whatsoever.

60.    All of the above will thwart and impede Plaintiff Poder Latinx's voter registration and civic engagement goals and harm its core mission.

61.     All of the Challenged Provisions will impact naturalized citizens who are part of the community and constituency Poder Latinx serves through its voter education and voter mobilization programs.  Poder Latinx works closely with naturalized citizens to help them register to vote and to mobilize them to vote, relying in part on a network of key community activists who help shape Poder Latinx's agenda and who play a critical role in implementing Poder Latinx's programs. Thus, all of the Challenged Provisions will impact and harm Poder Latinx's constituents.

**CLAIMS**
**COUNT ONE**
**(Arbitrary and Disparate Treatment of Voter Registration Applicants Using the Federal Form and Currently Registered Voters, Equal Protection Clause of Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983)**

62.     The factual allegations contained in paragraphs 1 through 61 are incorporated into Count One, as though fully set forth herein.

63.     The U.S. Supreme Court has long forbidden arbitrary allocation of the right to vote and arbitrary registration practices. Supreme Court precedent prohibits "arbitrary and disparate treatment" in either the "allocation of the franchise" or "the manner of its exercise." *Bush v. Gore*, 531 U.S. 98, 104 (2000); *id*. at 104–09 (concluding that "absence of specific standards" to implement vague "intent of the voter" standard caused "arbitrary and disparate treatment" in manual recount in violation of the Equal Protection Clause); *see also Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 235, 239–42 (6th Cir. 2011) (applying *Bush v. Gore* to conclude "lack of specific standards for reviewing provisional ballots" had resulted in unconstitutionally "arbitrary and uneven exercise of discretion").

64.     Arbitrarily allocating the right to vote has long been held unconstitutional.  *See Louisiana v. United States*, 380 U.S. 145, 150–53 (1965) ("The cherished right of people in a country like ours to vote cannot be obliterated by the use of laws like this, which leave the voting fate of a citizen to the passing whim or impulse of an individual registrar."). Indeed, any "arbitrary impairment" of the right to vote violates equal protection. *Baker v. Carr*, 369

27

U.S. 186, 208 (1962) ("A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution . . .").

65.    Arizona's DPOC law enumerates the specific forms of proof that a voter registration applicant can provide to establish U.S. citizenship. Ariz. Rev. Stat. § 16-166(F). HB 2492, by contrast, does not enumerate what specific "information" proves that a voter registration applicant using the federal form or a registered voter "is not a U.S. citizen." The latter contains only a vague instruction that leaves the registration applicant or registered voter's citizenship status to the discretion and subjective, arbitrary determinations of Defendant Hobbs, Defendant Brnovich, and county recorder offices' staff.

66.    On the front end of the voter registration process, county recorders who receive a federal registration form that is not accompanied by DPOC must attempt to "verify the citizenship status of the applicant" and must compare the registration applicant's information to every federal, state, and local government database and every "other database relating to voter registration" to which the county recorder has access.

67.    HB 2492 specifies that

> [i]f the county recorder or other officer in charge of elections matches the [federal form] applicant with information that the applicant is not a United States citizen, the county recorder or other officer in charge of elections shall reject the application, notify the applicant that the application was rejected because the applicant is not a United States citizen and forward the application to the county attorney and Attorney General for investigation.

Ariz. Rev. Stat. § 16-121.01(E), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4. What constitutes "information that the applicant is not a United States citizen" is left unspecified and for the discretion and subjective, arbitrary determinations of Arizona's 15 county recorders' offices and their staff members. How county recorders and their staff must evaluate and interpret stale information that a person lacked U.S. citizenship at some time in the past, during for instance a government transaction for driver licensing or public assistance, is also left unspecified. The flagged individual's likely naturalization as a U.S.

28

citizen subsequent to that outdated government transaction record but *prior to* registering as an Arizona voter is left unaddressed. The legal void created by these vague instructions will be filled with the judgment calls and discretion of county recorders and their staff who will inevitably make inconsistent and irreconcilable determinations on voter registration applicants' citizenship status. Such arbitrary and disparate treatment concerning the allocation of the right to vote is HB 2492's inevitable consequence.

68.     A similar process is required on the back end of the voter registration process. For registered Arizona voters who have not provided DPOC and can only vote in congressional elections, HB 2492 requires Defendant Brnovich to engage in the same wide-ranging database review to identify voters who are purportedly not U.S. citizens and "prosecute individuals who are found to not be United States citizens." Ariz. Rev. Stat. § 16-143, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 7.

69.     HB 2492 also requires county recorders to cancel the voter registration records of individuals when they "receive[ ] and confirm[ ] information that the person registered is not a United States citizen." Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8. Once again, HB 2492 does not specify what type, set, or combination of "information" establishes that a registered voter "is not a United States citizen" currently; nor do these provisions acknowledge, let alone address, these flagged registered voters' likely naturalization subsequent to the government record's creation but before their registration as a voter. These vague instructions will inevitably lead to arbitrary and disparate treatment of registered voters and arbitrary allocation of the right to vote. HB 2492 therefore authorizes county recorders and their staff to rely on outdated government data or unverified, unsubstantiated statements regarding a registered voter's citizenship status and remove that voter from the rolls. While not all county recorders and not all staff members will rely on such unreliable information though, the result will be the arbitrary and disparate treatment of naturalized registered Arizona voters.

29

70. There is no database that has current, up-to-date citizenship status information for all residents of the United States or Arizona. All databases that contain citizenship status information are based on transactions or events that took place at some point in the past. Relying on stale, old government data as if it were evidence of a registration applicant's or registered voter's present-day citizenship status is illogical and irrational and will inevitably lead to arbitrary and disparate treatment and arbitrary allocation of the right to vote.

71. HB 2492's citizenship investigation procedures, including the registration cancellation provision, subject naturalized voter registration applicants and naturalized registered voters to arbitrary and disparate treatment within counties and statewide, in violation of the Equal Protection Clause.

72. At all relevant times, Defendants have acted under color of state law.

73. Defendants have violated and will continue to violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT TWO**
**(Violation of Procedural Due Process as to Voter Registration Applicants Using the Federal Form Who Do Not Provide Documentary Proof of Citizenship, Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983)**

74. The factual allegations contained in paragraphs 1 through 61 are incorporated into Count Two, as though fully set forth herein.

75. The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. "The Due Process Clause 'forbids the governmental deprivation of substantive rights without constitutionally adequate procedure.'" *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1090–91 (9th Cir. 2008)). "The touchstone of procedural due process is notice and an opportunity to be heard." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1225 (9th Cir. 2021).

76. Courts assessing procedural due process claims must weigh "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the

value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

77. "A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'" *Power Road-Williams Field, LLC v. Gilbert*, 14 F. Supp. 3d 1304, 1311 (D. Ariz. 2014) (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir. 1994)). "The Ninth Circuit has long held that applicants have a property interest protectible under the Due Process Clause where the regulations establishing entitlement to the benefit are . . . mandatory in nature." *Foss v. NMFS*, 161 F.3d 584, 588 (9th Cir. 1998); *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." (quotation omitted)). The same is true with respect to the creation of a liberty interest. *See Mendoza v. Blodgett,* 960 F.2d 1425, 1428–29 (9th Cir. 1992) ("A state creates a protected liberty interest when it places substantive limitations on official discretion. . . . The regulations also must contain 'explicitly mandatory language,' *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest." (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989))).

78. Under the U.S. Constitution, the right to vote is "precious" and "fundamental." *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 670 (1966). The right to vote is "of the most fundamental significance under our constitutional structure." *Burdick v. Takushi,* 504 U.S. 428, 433 (1992) (quoting *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of a representative democracy." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Accordingly,

procedural due process protections apply to the right to vote as a constitutionally protected liberty interest.

79. Arizona law creates a protectible interest in voter registration by guaranteeing the right to register to every U.S. citizen who is at least 18 years old, who has been a resident of the state for at least 29 days before Election Day, who has not been convicted of a disqualifying felony, and who timely registers to vote in accordance with the rules and procedures established under state law and regulations. Ariz. Const. § 2(A); *see* Ariz. Rev. Stat. §§ 16-101, 16-121. It does not give the county recorders discretion to deny the applications of individuals who satisfy these criteria, rules, and procedures. *See* Ariz. Rev. Stat. § 16-163(A) ("The county recorder, on receipt of a registration in proper form, *shall* assign the registration record to its proper precinct and alphabetical arrangement in the general county register." (emphasis added)).

80. HB 2492 amended Arizona's voter qualification statutes such that a registrant must "provide[ ] satisfactory evidence of citizenship" to qualify to register. Ariz. Rev. Stat. §§ 16-101(A)(1), 16-121(A), *as amended by* 2022 Ariz. Sess. Laws ch. 99, §§ 1, 3. However, even if a federal form applicant does not submit DPOC, the requirement is fully satisfied if county recorders' staff can independently verify a federal form applicant's U.S. citizenship. *Id.* § 16-121.01(D), *as amended by* 2022 Ariz. Sess. Laws, ch. 99, § 4.

81. When a governing statute is sufficiently mandatory to grant an applicant a vested interest in an entitlement or benefit, applicants "who claim to meet the eligibility requirements" have a right to due process in the evaluation of their applications, including in the methods used to assess their eligibility. *Griffeth v. Detrich*, 603 F.2d 118, 121 (9th Cir. 1979); *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001) (recognizing that "applicants for social security disability benefits are entitled to due process in the determination of their claims" because they have property interest in benefits); *Stivers v. Pierce*, 71 F.3d 732, 740–41 (9th Cir. 1995) ("It is well-settled that the Due Process Clause prevents the state from depriving a plaintiff of a protected property interest without 'a fair

trial in a fair tribunal.' . . . This requirement applies not only to courts, but also to state administrative agencies charged with applying eligibility criteria for licenses." (internal citation omitted)); *see also Ressler v. Pierce*, 692 F.2d 1212, 1216 (9th Cir. 1982) (holding that plaintiff "should have been given some means of ensuring that her application for Section 8 benefits was received and given meaningful review"). Federal form applicants who submit their forms without DPOC therefore have a right to due process in how their U.S. citizenship is investigated.

82.    The citizenship investigation procedures established by HB 2492, particularly the vague standard "information that the applicant is not a United States citizen," create a high risk of erroneous deprivation, for the reasons described above in Count One. Additionally, while notice is given to registration applicants who are "matched" to information indicating they are not U.S. citizens, HB 2492 fails to give these individuals an opportunity to submit DPOC and reflexively refers the applicant to law enforcement for investigation. Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4 ("If the county recorder or other officer in charge of elections matches the applicant with information that the applicant is not a United States citizen, the county recorder or other officer in charge of elections shall reject the application, notify the applicant that the application was rejected because the applicant is not a United States citizen and forward the application to the county attorney and Attorney General for investigation.").

83.    In order to be meaningful, the right to be heard must be afforded prior to the deprivation. *See Fuentes v. Shevin,* 407 U.S. 67, 82 (1972) ("[I]f the right to notice and a hearing is to serve its full purpose, then it is clear that it must be granted at a time when the deprivation can still be prevented . . . the Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect."). HB 2492 fails to provide an opportunity to be heard prior to the denial of a registration application, and thus does not comport with requirements of procedural due process.

33

84.     No government interest exists that outweighs the risk of disenfranchisement faced by federal form applicants who are matched to non-citizenship information.

85.     At all relevant times, Defendants have acted under color of state law. For the foregoing reasons, Defendants have violated and will continue to violate procedural due process, as guaranteed by the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT THREE**
**(Violation of Procedural Due Process as to Voter Registration Applicants Who Fail to Provide Documentary Proof of Residence, Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983)**

86.     The factual allegations contained in paragraphs 1 through 61 are incorporated into Count Three, as though fully set forth herein.

87.     The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. "The Due Process Clause 'forbids the governmental deprivation of substantive rights without constitutionally adequate procedure.'" *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1090–91 (9th Cir. 2008)). Plaintiffs alleging procedural due process violations must prove "two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *United States v. 101 Houseco, LLC*, 22 F.4th 843, 851 (9th Cir. 2021) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)). "The touchstone of procedural due process is notice and an opportunity to be heard." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1225 (9th Cir. 2021).

88.     Courts assessing procedural due process claims must weigh "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the

burdens of additional procedural requirements." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

89.    The new DPOR requirement does not require county recorders to provide notice to voter registration applicants that they failed to provide DPOR, let alone give them an opportunity to cure the deficiency.

90.    The notice provisions in Ariz. Rev. Stat. § 16-134 and Ariz. Rev. Stat. § 16-121.01(A), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4, refer to missing or incomplete "information **on** the registration form" or "information required to be **on** the registration form." (Emphasis added). With one exception – the Arizona driver's license or ID number that can satisfy the DPOR requirement – all other forms of *documentary* proof of residence are presented separately and not **on** a registration form. Under these statutory provisions, notice of missing DPOR might be provided to voter registration applicants using the Arizona voter registration form. However, they have no application to applicants who submit the federal registration form, so at a minimum, Arizona law fails to provide due process to registration applicants using the federal registration form.

91.    A liberty or property interest that is governed by due process can be created by the Constitution or "may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In this case, qualifying voter registration applicants have a protected interest in registering to vote.

92.    Eligible, registered voters enjoy an "individual and personal" right to vote. *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). Indeed, the Supreme Court has recognized their "strong interest in exercising the 'fundamental political right' to vote." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'") (quoting *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)); *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964) (holding that the right to vote "is a fundamental matter in a free and

democratic society"); *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) ("The . . . political franchise of voting . . . is regarded as a fundamental political right, because [it is] preservative of all rights."). "The [Due Process] Clause provides heightened protection against government interference with certain fundamental rights and liberty interests." *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

93. Voter registration applicants who meet the eligibility requirements and submit a federal or state registration form are entitled to be registered to vote. Having established such an entitlement, the state may not deprive an individual of it without complying with the Due Process Clause. Under HB 2492, they must provide DPOR, but if they fail to do so, due process requires that they be notified and given an opportunity to cure that deficiency before they are deprived of their statutory entitlement or liberty interest in voter registration.

94. Arizona law creates a protectible interest in voter registration by guaranteeing the right to register to every U.S. citizen who is at least 18 years old, who has been a resident of the state for at least 29 days before Election Day, who has not been convicted of a disqualifying felony, and who timely registers to vote in accordance with the rules and procedures established under state law and regulations. Ariz. Const. § 2(A); Ariz. Rev. Stat. §§ 16-101, 16-121; *see also* Ariz. Rev. Stat. § 16-163(A) ("The county recorder, on receipt of a registration in proper form, shall assign the registration record to its proper precinct and alphabetical arrangement in the general county register."). Additionally, a registered voter is entitled by law to their continued registration. Under Arizona law, "[a] person continues to be a qualified elector until that person's registration is canceled pursuant to § 16-165 or until that person does not qualify as a resident . . ." Ariz. Rev. Stat. § 16-121(A).

95. The fundamental liberty interest in exercising one's right to vote is extremely strong and clearly outweighs the government's weak interest in denying otherwise-valid registration applications without giving these applicants notice and an opportunity to prove their residence. Defendants have a weighty interest in meeting federal constitutional requirements, and they lack any legitimate interest in rejecting registration forms or

canceling registration records without affording the registration applicant both notice and an opportunity to be heard.

96.    At all relevant times, Defendants have acted under color of state law.

97.    For the foregoing reasons, Defendants have violated and will continue to violate procedural due process with respect to registration applicants who fail to provide DPOR, as guaranteed by the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court:

(a)    Assume jurisdiction over this matter;

(b)    Declare that the citizenship investigation procedures of HB 2492, specifically Ariz. Rev. Stat. §§ 16-121.01(D), 16-121.01(E), and 16-121.01(F), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4, Ariz. Rev. Stat. § 16-143, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 7, and Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8, violate the Fourteenth Amendment's Equal Protection and Due Process Clauses, facially and as applied;

(c)    Issue preliminary and permanent injunctions barring Defendants, their agents, and successors from enforcing or acting under the authority granted in Ariz. Rev. Stat. §§ 16-121.01(D), 16-121.01(E), 16-121.01(F), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4, Ariz. Rev. Stat. § 16-143, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 7, and Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8;

(d)    Declare that the documentary proof of residence requirement violates the Due Process Clause of the Fourteenth Amendment on its face;

(e)    Issue preliminary and permanent injunctions requiring Defendants to provide all registration applicants who fail to provide DPOR with notice and an opportunity to cure the deficiency;

(f)    Grant Plaintiff its reasonable costs and attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and as otherwise permitted by law; and

(g)    Grant such other relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 9th day of June, 2022.

/s/ Daniel Adelman
Daniel J. Adelman (011368)
Arizona Center for Law
    in the Public Interest
352 E. Camelback Rd., Suite 200
Phoenix, AZ  85012
danny@aclpi.org
(602) 258-8850

Jon Sherman*
D.C. Bar No. 998271
Michelle Kanter Cohen*
D.C. Bar No. 989164
Cecilia Aguilera*
D.C. Bar No. 1617884
Fair Elections Center
1825 K St. NW, Ste. 450
Washington, D.C. 20006
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
caguilera@fairelectionscenter.org
(202) 331-0114

John A. Freedman*
Jeremy Karpatkin*
Erica McCabe*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C.  20001
John.Freedman@arnoldporter.com
Jeremy.Karpatkin@arnoldporter.com
Erica.McCabe@arnoldporter.com
(202) 942-5000

Steven L. Mayer*
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Steve.Mayer@arnoldporter.com
(415) 471-3100

Leah R. Novak*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019
Leah.Novak@arnoldporter.com
(212) 836-8000

Counsel for Plaintiff
*Application for Pro Hac Vice Admission
Forthcoming